# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

MICHAEL LUSK,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. C15-0043-CJW

**MEMORANDUM OPINION AND ORDER**

---

The claimant, Michael Lusk (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income benefits (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining he was not disabled. For the reasons that follow, the court affirms the Commissioner's decision.

## I.     BACKGROUND

Claimant was born in 1959 and was 53 years old at the time of the ALJ's decision. AR 19, 27, 182.[1] Claimant completed one year of college, but testified he was in special education classes because of hearing and speech problems caused by premature birth. AR 44, 100. He served a year and a half in the Iowa National Guard. AR 39. He lives with his parents, and he helps with dishes and mowing the lawn. AR 39-40. He

---

[1] "AR" refers to the administrative record below.

previously worked in fast food and as a laborer. AR 40-42. Claimant testified that he became disabled in September 2004 when he fell while building a garage. AR 40. He testified that when he fell, he dislocated his shoulder and "ripped [his] stomach muscles." *Id*.

On November 17, 2011, claimant filed an application for disability benefits, alleging disability beginning September 6, 2004. AR 19, 182. SSI benefits are not payable prior to the month following the month in which an application is filed (20 C.F.R. § 416.335), so his effective date of claimed disability was December 17, 2011. Claimant asserted he was disabled due to back, hearing, hand, finger, knee, feet, shoulder, and vision problems; deafness in the right ear; hearing loss in the left ear; torn stomach muscles; hernias; depression; cataracts; possible diabetes; sleep apnea; allergies; chronic obstructive pulmonary disease (COPD); acid reflux; high blood pressure; and anxiety. AR 221.

On January 27, 2011, the Commissioner denied claimant's application, and on March 27, 2012, denied his request for reconsideration. AR 19. On April 5, 2012, claimant filed a written request for a hearing. *Id*. On August 13, 2013, ALJ John E. Sandbothe, convened a hearing at which claimant and vocational expert (VE) Carmen Mitchell testified. AR35-62. The Appeals Council affirmed the ALJ's finding. AR 1-7. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On May 15, 2015, claimant filed a complaint in this court. Doc. 3. On October 1, 2015, with the consent of the parties, the Honorable Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 15. The parties have briefed the issues and, on November 16, 2015, this case was deemed fully submitted. Doc. 17. On February 19, 2016, this case was assigned to the undersigned United States Magistrate Judge for a ruling. Doc. 18.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past

relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since November 17, 2011, the application date (20 C.F.R. §404.1571 *et seq*.).

(2) The claimant has the following severe impairments: degenerative joint disease; depression; chronic obstructive pulmonary disease (COPD); anxiety; deafness in the right ear; status pose left shoulder surgery (20 C.F.R. §416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

(4) Claimant has the Residual Functional Capacity to perform medium work as defined in 20 C.F.R. §416.976(b), except he is limited to simple, repetitive, routine work with no contact with the public. He can work no more than a regular pace.

(5) The claimant is capable of performing past relevant work as a Laborer, Stores. This work does not require the performance of work-related activities precluded

6

> by the claimant's residual functional capacity (20 C.F.R. §416.965).
>
> (6) The claimant has not been under a disability, as defined in the Social Security Act, since November 17, 2011, the date he filed the application (20 C.F.R. §416.920(f)).

AR 20–30.

In arriving at his decision the ALJ considered: claimant's subjective claims; a report from Lucille Howe, claimant's mother; a consultative examination conducted by Dr. Harlan J. Stientjes, Ph.D.; State Agency medical consultants, Drs. Dennis Weis and Laura Griffith; and medical records. AR 22-27.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

This court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidenced may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## V. DISCUSSION

Claimant argues the ALJ's residual functional capacity (RFC) assessment is flawed for four reasons:

1. The ALJ gave "great weight" to consultative examining psychologist Dr. Harlan Stientjes, but failed to include that doctor's work-related limitations. Doc. 14, at 15-18.

2. The ALJ rejected the State Agency consultative doctors' opinions that claimant is limited to occasional overhead reaching. Doc. 14, at 18-21.

3. The ALJ failed to include hearing loss as a severe impairment. Doc. 14, at 21-24.

4. The ALJ overlooked or ignored medical evidence of claimant's abdominal pain and fatigue. Doc. 14, at 24-26.

The court will address these arguments separately below.

### A. RFC Determination - Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). *See also Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (an ALJ is required to "determine the claimant's FRC based on all relevant evidence, including medical records, observations treating physicians and others, and claimant's own descriptions of [her] limitations."). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.

9

2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Moreover, an "ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### B. Whether the ALJ erred in giving great weight to the examining psychologist's opinion, but excluding certain work-related limitations

Claimant argues the ALJ erred in determining his RFC because "the ALJ relied upon a hypothetical question to the vocational expert at hearing that did not include all of the limitations included" Dr. Stientjes, the consulting examining psychologist, included in his opinion. Doc. 14, at 15. Specifically, claimant asserts "Dr. Stientjes believed the claimant's prospect of sustained gainful employment was essentially nil because of long-standing establishment of disabled mentality." *Id*. Claimant further states Dr. Stientjes found claimant was moderately limited in his ability to carry out complex instructions, make judgments, interact with coworkers, and respond to usual work situations and changes in routine work settings. *Id*., at 16. Claimant argues these limitations are inconsistent with the ALJ's determination that claimant was only limited to simple,

repetitive, routine work with no contact with the public and no more than a regular work pace. *Id*.

The ALJ did afford "great weight" to Dr. Stientjes' opinion (AR 25-26), but that does not mean that the ALJ was compelled to adopt the doctor's opinion that claimant's prospects for "sustained gainful employment is essentially nil because of long-standing establishment of disabled mentality" (AR 786). First, it appears to the court that Dr. Stientjes was expressing his belief that claimant's conviction that he is disabled, valid or not, will impair his ability to ever work. In other words, the doctor was not opining that claimant cannot be gainfully employed because of any limitation as much as he is commenting on claimant's defeatist attitude. Regardless, the ALJ was not required to afford this opinion any weight because whether claimant is employable or disabled is a decision reserved to the Commissioner, not a consultative examining psychologist. "A medical source opinion that an applicant is 'disabled' or 'unable to work' … involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing *Stormo*, 377 F.3d at 806). In *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008), the court held that a doctor's conclusion that a claimant was disabled "receives no deference because a finding of disability is one reserved for the Commissioner" and although the "ALJ is free to take [the doctor's] opinion on [the claimant's] ability to work into consideration when assessing her social security claim, [] such an opinion does not describe a physical limitation based upon [the claimant's physical ailments that the ALJ must include in its hypothetical to the VE."

The ALJ did consider Dr. Stientjes' finding that claimant was moderately limited in his ability to carry out complex instructions, make judgments, interact with coworkers, and respond to usual work situations and changes in routine work settings. AR 7-8. It is important, however, to emphasize that Dr. Stientjes found claimant had moderate

limitations only with respect to making complex work-related decisions and regarding carrying out complex instructions. AR 787. Dr. Stientjes determined that claimant had only mild limitations regarding making judgments on simple work-related decisions, and mild limitations in understanding and remembering complex instructions. *Id*.

The form itself states that a "moderate" ranking means "the individual is still able to function satisfactorily." AR 787. A "mild" ranking means "there is a slight limitation in this area, but the individual can generally function well." *Id*. *See also Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (finding ALJ did not err in failing to include "moderate" limitations in the RFC because moderate means the individual could still function satisfactorily). For that same reason, it was not necessary for the ALJ to include these mild and moderate limitations in the hypothetical question to the vocational expert. In any event, the hypothetical adequately accounted for these limitations. In the hypothetical question, the ALJ described:

> [A] 53-year-old man with 13 years of education, much of it in special education, diagnosed with degenerative joint disease, depression, COPD, deaf in the right ear, [inaudible] left shoulder surgery[, a] hernia issue affect[ing] his lifting[, with the following limitations:] He can lift 50 pounds occasionally, 25 pounds frequently. He would be limited to simple, routine, repetitive work. No contact with the public, regular pace.

AR 59-60. By limiting the hypothetical worker to simple, routine, and repetitive work, it accounted for the moderate limitations Dr. Stientjes found. *See* Social Security Ruling 83-10, 1983 WL 21351, *7 ("Unskilled work is work which needs little or no judgment to do simple duties."). *See also*, *e.g.*, *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("While the hypothetical question must set forth all [of] the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.") (internal quotation and citation omitted) (finding claimant capable of "simple work" adequately accounted

for claimant's borderline intellectual functioning); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir.1997) (holding that a hypothetical including the "ability to do only simple routine repetitive work, which does not require close attention to detail" sufficiently described deficiencies of concentration, persistence, or pace).

Nor did the ALJ err in not including limitations regarding claimant's ability to work with coworkers. Dr. Stientjes found claimant was moderately limited in his ability to interact with coworkers, but only mildly limited in his ability to interact appropriately with the public and supervisors. AR 788. As above, a moderate finding here means claimant can "function satisfactorily" in his ability to interact appropriately with coworkers. Accordingly, the ALJ was not required to include it in claimant's RFC. In any event, the rest of Dr. Stientjes' report does not support the conclusion that claimant would be impaired in his ability to interact appropriately with coworkers. Dr. Stientjes reported claimant was responsive and cooperative and capable of attaining and maintaining eye contact, and found claimant communicated within normal limits. AR 785-86. Further, the record as a whole does not support this moderate limitation. Claimant had never been fire or laid off from a job because of is interaction with coworkers. AR 256, 282. Finally, there is nothing in Dr. Stientjes' report, or elsewhere in the record, to reconcile Dr. Stientjes' seemingly inconsistent findings that claimant was only mildly impaired in interacting appropriately with the public and his supervisors, but moderately impaired in interacting appropriately with his coworkers.

Accordingly, the court finds that the ALJ's decision to omit Dr. Stientjes' opinion about claimant's ability to work and moderate limitations was within the ALJ's "available 'zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

### C. Whether The ALJ Should Have Found an Overhead Reaching Limitation

Claimant argues the ALJ erred in rejecting what he says are uncontroverted opinions of State Agency medical consultants who determined claimant had limitations in his overhead reaching ability. Doc. 14, at 18-21. The ALJ may consider state agency physicians' opinions and may rely upon them in making findings. *See* 20 C.F.R. § 404.1527(e)(2)(i); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that it is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment). Dr. Dennis Weiss opined in January 2012 that claimant was limited to occasional overhead reaching. AR 97-98. Dr. Laura Griffith reached the same conclusion in March 2012. AR 112-13. Claimant acknowledges that the ALJ discounted these opinions because there was new evidence not available to those doctors in 2012. AR 27. Claimant argues, however, that "[t]he only report cited by the ALJ that was not considered by the state agency consultants" was a March 2012 report that "noted the claimant's shoulder pain was unchanged." Doc. 14, at 19. Claimant further asserts that the other medical records do not support the ALJ's decision to omit this limitation. Doc. 14, at 19.

Claimant is incorrect. The record as a whole demonstrates there was substantial medical evidence, post-dating the 2012 opinions by the medical consultants, showing claimant is not limited in his ability to reach overhead. First, although claimant testified about his arm limitations, he did not testify he was limited in his overhead reaching ability. AR 47-49. Later in March 2012, after Dr. Griffith's review, a University of Iowa Hospital and Clinics (UIHC) report noted claimant had no abnormalities in his extremities, and had "motor full and symmetric in all 4 extremities." AR 502. Three months later, a Mercy Medical Center (MMC) record reflects that claimant had normal range of motion in his extremities. AR 572. In July 2012, a UIHC record shows "Motor

full and symmetric in all 4 extremities." AR 529. The following year, a UIHC report shows plaintiff had full motor strength in his upper extremities. AR 768. Two months later, Pikeville Medical Center (PMC) records show claimant had "strong" strength in all extremities. AR 886, 895, 965. By August 2013, PMC records reflect that claimant's reflexes, motor power, and sense were normal in all extremities. AR 802.

Moreover, the records available to the State Agency reviewing physicians do not support their conclusion that claimant should have limitations to occasional overhead reaching. An x-ray of claimant's left shoulder in 2006 showed normal alignment, no fracture, and present joint spaces, leading to an impression of "Normal left shoulder." AR 625. In June 2011, a MMC record shows a normal range of motion in claimant's extremities. AR 353. Multiple UIHC neurological examinations in 2011 consistently showed no abnormalities and "Motor full and symmetric in all 4 extremities." AR 451, 457, 706. Accordingly, the ALJ could properly discount the State Agency reviewing physicians' opinions. *See Goff*, 421 F.3d at 790–91 ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion.").

Therefore, the court finds there was substantial evidence for the ALJ to determine that claimant did not have any overhead reach limitations.

### D. *Whether the ALJ Should Have Imposed Hearing Limitations*

Claimant argues that, although the ALJ found claimant suffered from deafness, he erred when he failed to "incorporate any hearing limitations into [claimant's] residual functional capacity assessment or the hypothetical question to the vocational expert." Doc. 14, at 22. Claimant asserts that he has had hearing loss since he was a child and, although he was able to work, his hearing has "deteriorated over the last several years." Doc. 14, at 22. The Commissioner argues the ALJ was not required to include hearing

limitations in the RFC because, although claimant "had abnormal [hearing] test results, he did not have any significant functional loss." Doc. 16, at 10.

The record shows that in 1966, claimant had ear surgery at age 6. AR 458. Claimant does not identify any subsequent medical records pertaining to claimant's hearing loss until 2011, when claimant was 51 years old. AR 406. Claimant complained of increased hearing loss at that time. *Id*. On April 1, 2011, claimant told medical personnel at the UIHC that he had a hearing aid for his right ear approximately four years before, "but it is no longer functioning." AR 411. Testing at that time showed claimant had "moderate/severe" hearing loss in the right ear and "borderline normal/normal" hearing in the left ear. *Id*. Word recognition was nevertheless "good" in the right ear and "excellent" in the left ear." *Id*. Claimant saw medical personnel in June and July of 2011, complaining of earaches, and he was diagnosed with an ear infection. AR 352, 416, 422. An examination in 2012 showed that claimant's "speech discrimination is within normal limits in the left ear and good in the right ear." AR 780. In April 2014, an audiometric evaluation of claimant's hearing showed that claimant's hearing in his left ear was within normal limits and he had 96% word recognition, and "severe to profound conductive hearing loss" in his right ear, but he still retained 80% word recognition. AR 1114.

Nothing in the rest of the record supports a conclusion that claimant's hearing impairment would affect his ability to work. The ALJ found claimant could return to his past work as a Laborer, Stores, which requires "occasional" hearing. AR 27, 318. There is nothing in the record showing that hearing impairments limited his ability to work in the past. Claimant's mother reported claimant could understand speech as long as it was slow, but did not believe the speaker needed to be loud. AR 235. When an agency representative processed a teleclaim from claimant on December 1, 2011, the representative noted that claimant did not have difficulty hearing. AR 218-19. A review

the hearing transcript does not reflect that claimant had any difficulty hearing. AR 36-62.

Hypothetical questions posed to vocational experts "must capture the concrete consequences of the claimant's deficiencies" but an "ALJ may exclude any alleged impairments … properly rejected as untrue or unsubstantiated." *Perkins*, 648 F.3d at 901–02. *See also Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments.") (quotations and citations omitted). "A proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant." *Hutton v. Apfel*, 175 F.3d 651, 656 (8th Cir. 1999). Imprecise wording by the ALJ will not, however, render a hypothetical question improper, so long as it still adequately describes the limitations. *Harwood v. Apfel*, 186 F.3d 1039, 1044 (8th Cir. 1999).

Although claimant asserts the ALJ failed to "incorporate any hearing limitations into … the hypothetical question to the vocational expert" (Doc. 14, at 22), claimant is mistaken. In the hypothetical the ALJ posed to the vocational expert, he did include claimant's deafness in the right ear. AR 59-60. The ALJ did not include hearing limitations in claimant's left ear, but the record does not support a finding of severe impairment to hearing in claimant's left ear. Therefore, the hypothetical question the ALJ posed to the vocational expert adequately described the extent to which claimant had a hearing impairment.

Accordingly, the court finds there was substantial evidence to support the ALJ's residual functional capacity assessment regarding claimant's hearing, and the ALJ's hypothetical question to the vocational expert was not defective.

### E. Whether the ALJ Should Have Found Limitations for Abdominal Pain and Fatigue

Claimant argues the ALJ's RFC assessment was flawed because the ALJ overlooked or ignored the medical evidence regarding [claimant's] abdominal pain and fatigue. Doc. 14, at 24-26. Claimant asserts the abdominal pain is a product of his esophagitis and hernia, and his fatigue is due to sleep apnea. Doc. 14, at 24. Although claimant acknowledges sleep apnea is remediable by a Continuous Positive Airway Pressure (CPAP) machine, he asserts he "was unable to afford one for several years." *Id*. The Commissioner argues that, although there are medical records showing claimant had abdominal-related problems, claimant "does not adequately show that he had functional limitations flowing from that impairment." Doc. 16, at 11. Regarding claimant's fatigue, the Commissioner points out that claimant obtained a CPAP machine and has not used it. Doc. 16, at 12.

There is evidence in the record of claimant having abdominal pain, apparently connected to esophagitis, and a hernia. AR 412-13, 650-52, 439-41, 446, 452, 492. But, claimant told providers that he had no problems with his esophagitis so long as he took his medication. AR 1085. The hernia was operable, but only if claimant lost weight to allow for the surgery; he apparently has been unable to meet that precondition. AR 100. The ALJ included claimant's hernia and lifting limitations in the hypothetical question he posed to the vocational expert. AR 59-60. The ALJ also noted claimant's complaint that he had "'split stomach muscles' that made it hard for him to bend or lift." AR 23. The ALJ determined claimant had a residual functional capacity to perform medium work, "which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). Claimant points to nothing in the record that would demonstrate that his recurring abdominal complaints would impact his ability to perform medium work as a store laborer. Indeed, claimant's

other activities would suggest he is fully capable of medium work, as he reported mowing a lawn, shoveling snow, and exercising for 30 minutes every day. AR 39-40, 260, 733.

Regarding claimant's fatigue due to sleep apnea, claimant concedes that a CPAP machine would remedy this problem. In June 2010, a trial use of a CPAP machine in therapy demonstrated that it was successful in treating claimant's sleep apnea. AR 666. In September 2010, claimant told a treatment provider that he had obtained a CPAP machine from the Community Health Free Clinic, but explained that he did not "have the connections to make it work." AR 368. On January 26, 2011, claimant reported to Dr. Douglas H. Jones, a consulting psychiatrist, that "he got a CPAP device from Jane Boyd [a health clinic], but that it is missing some parts." AR 392. Dr. Jones instructed claimant to "talk to Jane Boyd about that." *Id*. In August 2011, claimant advised UIHC that "he is unable to afford CPAP." AR 430. In November 2011, he told a social worker at the Abbe Center for Mental Health that he obtained a CPAP from the Jane Boyd center, but it was missing parts; he was advised to "talk to Jane Boyd about that." AR 372. In March 2013, claimant told a doctor at UIHC that he "[h]as never been on CPAP as he could not afford the equipment." AR 751. In June 2013, he told another doctor at UIHC he "does not wear a CPAP because he could not afford it." AR 764. In November 2013, he obtained a new CPAP machine. AR 1077. Yet, in January 2014, he again reported to UIHC personnel that he was "[n]ot using CPAP as he could not afford the equipment," and in the same visit stated he has not had anyone check the equipment. AR 1099.

Unexcused noncompliance may disqualify an otherwise disabled claimant from receiving benefits. *See* 20 C.F.R. §§ 404.1530, 416.930. Noncompliance with prescribed medical treatment may also be considered in evaluating a claimant's credibility. *See* Social Security Ruling ("SSR") 96–7p, 1996 WL 374186. Claimant had a CPAP machine as early as 2010, but it was allegedly missing parts. Despite being told repeatedly to speak with the health free clinic where he got the machine about the missing

parts, there is nothing in the record showing he did so. Moreover, claimant obtained another, apparently fully functioning, CPAP machine in 2013, but the record reflects that he simply has not used it. This is not a case where claimant's noncompliance was because he could not afford a CPAP machine; he got them free. When, as here, a claimant fails to comply with doctors' orders or use a machine to remedy a condition, the ALJ need not include limitations in the RFC. *Wildman v. Astrue*, 596 F.3d 959, 969-70 (8th Cir. 2010). Claimant cites *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014), for the proposition that "[t]he ALJ clearly erred in his assessment of the medical evidence, overlooking a number of reports related to Mr. Lusk's sleep apnea and resulting fatigue and his inability to obtain a CPAP machine." Doc. 14, at 26. There is nothing in the *Burrell* about sleep apnea, CPAP machines, or fatigue, and, therefore, is not instructive. Finally, claimant has pointed to nothing in the record showing that his fatigue affected his ability to perform medium work.

## *VI. CONCLUSION*

After a thorough review of the entire record, the court concludes there is substantial evidence in the record to support the Commissioner's decision. Accordingly, the court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 15th day of July, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa